And I understand you're splitting argument, counsel, for the petitioner. Thank you. Thank you. Good morning, may it please the court. My name is Jennifer Norris for petitioner Jose Dominguez-Chij. My co-counsel Lava Lee Forbes and I will each take six minutes and we will aim to reserve three minutes for rebuttal. We will watch our own time. She will be addressing aggregation and I will be addressing acquiescence and ignoring expert testimony. Here the agency committed a host of legal errors in denying Mr. Dominguez-Chij cat protection. This court should remand for two reasons. First, the agency legally erred when it determined that there was no government acquiescence for torture, merely because the government was taking steps at the national level to combat gangs, without examining the efficacy of those efforts or whether local actors on the ground would acquiesce to torture by gangs. This approach is irreconcilable with this court's decisions. And so Chibahay may be barred and Madrigal beholder. And second, the agency legally erred by ignoring dispositive evidence from country conditions expert Dr. Kirkland. The BIA failed to mention or engage with Dr. Kirkland's expert opinion that Mr. Dominguez-Chij would likely end up killed like his brother if he were returned to his hometown in Guatemala. This is per se reversible legal error under Castillo v. Barr and Encarnacion v. Bondi. Turning to the acquiescence error. Why was his brother killed? His brother was killed, Your Honor, because the family refused to pay extortion fees to Barrio 18. And they did this in defiance of the gang. And so in retaliation, they killed the brother. So in addition to country conditions evidence here demonstrating impunity for gang violence, there is also individualized evidence here that the police turned a blind eye to the gang violence that Mr. Dominguez-Chij's family faced. Despite the expert. I'm sorry. The expert said that he would be he would likely be killed because his brother was killed because of opposition to the gangs. Is that. That's correct, Your Honor. And because they actually reported this crime to the police. And despite widespread mistrust of the police and despite the family being indigenous and impoverished and many reasons not to go to the police, they put their faith in the police here and they reported this crime to the police. But the police failed to take a single step in the investigation. And we have declarations from numerous family members corroborating this. Mr. Dominguez-Chij testified at AR 273. The police didn't do anything. They didn't offer any assistance to us. We have his nephew saying at 1802 in the record, the authorities of the municipality do not ensure our safety, despite the fact that we have already made them aware of our situation and the danger we run. And so under this court standard, the acquiescence standard has been met because there are two elements, and that is notice to the authorities and breach of duty to intervene or protect. And here, Your Honor, we also submit that there was the agency applied legal error. It was legal error to only assess whether there were steps at the national level without evaluating the efficacy of those efforts or whether national actors or local actors on the ground would acquiesce to torture. And there's a long line of cases from Bringus-Rodriguez v. Sessions to Madrigal v. Holder, where the court determined that the agency too narrowly focused on national efforts without considering actual conditions on the ground. And as in Bringus-Rodriguez v. Sessions, this court that it held, it is well recognized that a country's laws are not always reflective of actual country conditions. And this record is replete with evidence that despite national policies, rampant corruption of the police force remains a problem, and there is impunity for gang violence. This is borne out by the experience of Mr. Dominguez-Chich's own family, who reported the murder of Barrio 18 to the police and were completely ignored. And turning to the second error, Your Honor, the agency also legally erred by ignoring dispositive evidence from Dr. Kirkland that he would likely be tortured by the gangs and that the police were corrupt and would turn a blind eye. The petitioner raised the claims regarding Dr. Kirkland to the BIA? Yes, Your Honor, and that is at AR 38. So this claim was exhausted before the board and was raised precisely as an error under Castillo v. Barr. But the board failed to address this error, and indeed it failed to mention Dr. Kirkland at all. This is actually very suspicious given the fact that Dr. Kirkland was an expert, on the security situation and specifically organized crime. The gang claim is Mr. Dominguez-Chich's most acute claim for torture, and Dr. Kirkland was found credible, but yet the BIA failed to mention Dr. Kirkland at all. And under Castillo v. Barr, this is legal error. But in addition, this court recently reiterated in Encarnacion v. Bondi, where the court held that if the board fails to mention or engage with highly probative expert opinions, stating that the petitioner would face torture upon removal, then this is a strong indication that the board did not fulfill its obligation to consider all evidence before it. And with that, I would like to turn it over to my co-counsel to discuss aggregation and reserve the remaining time for rebuttal. Thank you. Good morning, and may it please the court. Lavely Forbes for petitioner. I will now address the argument that the agency erred in not evaluating his risk of torture from all sources. Specifically, there were two sources of torture that were completely ignored by the agency. First, the agency completely ignored his feared torture from police. In his pretrial brief, Mr. Dominguez-Chich dedicated an entire section to his fear of the Guatemalan police. He indicated he was afraid of being tortured by the police because they were corrupt. They were perhaps colluding with Barrio 18 as evidenced by their non-action after they reported his brother's murder to the police and the subsequent threats they received from Barrio 18. And also because of his specific characteristics. In fact, he was coming to the country as a poor, unemployed, indigenous criminal deportee with a sex offense conviction with severe mental illness. Second, Mr. Dominguez-Chich clearly argued that if he were to be detained, that he would face torture from inmates in prison in addition to prison officials. However, this argument went also completely ignored by the agency. Only the risk of harm from prison officials was considered by the agency. The risk of harm from inmates in a detention context is very acute considering country conditions demonstrating that prisons in Guatemala are essentially run by the inmates who have a very hierarchical structure where they will extort and they will beat and they will control less powerful inmates for their own profit or to further the ends of organized crime. These prisons are filled with gang members including Barrio 18 who run these prisons. Now, if Mr. Dominguez-Chich were to end up in such a scenario where there are enemy gang members who have previously targeted his family, that is a very reasonable source of torture that he would be exposed to. In addition to Barrio 18, other gang members could extort him. As he has no money, he would not be able to pay which would again open him up to torture. Additionally, given that he's being deported with a sex offense conviction, he could be tortured on that basis as well. In addition to his mental illness which would bring attention to him if he were to hallucinate or to attempt suicide and could prompt more powerful inmates to take advantage of him and torture him in prison. The board incorrectly states that these sources of torture were considered. However, if you look at AR 99 to 100 and AR 102, this is plainly false. The immigration judge did not consider any of the arguments put forward as to why the police may torture him because of his problems with Barrio 18 or because of their corruption or because of any of his other demographics. The immigration judge also did not consider harm from inmates in prison. His entire section was analyzing only harm from prison officials, the conditions inside the detention center. He denied solely based on that. The board does not state in any part of their decision where the immigration judge actually considered harm from inmates themselves. Failure to consider one or more sources of torture is per se reversible legal error under Vasquez-Cruz v. Barr. It's also a failure to aggregate under Velazquez-Samayoya. So what do you make of the BIA saying that the IJ properly considered the aggregate risk of torture from the sources identified by the respondents? He says it more than once and he does – the BIA goes through all of these different sources and talks about aggregation of potential harm. I mean, what the bottom line the agency is saying is that we don't think that there's a likelihood that he would be detained, whether in a prison or in a mental health institution. Well, torture from the police can occur in the community as well, so it would not require – I'm sorry, can you speak up a little? Yes, for sure. Torture from the police could occur in the community as well as the detention context, so he does not actually need to be detained for that source of torture to be acute and for it to be considered here. And, you know, the board, I can only speculate what they were referring to when they say that the immigration judge considered this, because if you look at the actual immigration judge decision, the only mention of the police at all is actually a comment from the immigration judge saying that he wasn't – that his mental illness didn't draw the attention of the police in the United States. That's not even in Guatemala. He doesn't say anything about what could happen if the police were to target him in Guatemala for any of the number of reasons that he has put forward. So on page 17 of the IJ's opinion, he lists all these sources of torture, and then he says, however, where is here? The respondent has posited multiple theories for why he might be tortured. The relevant inquiry is whether the total probability that the applicant will be tortured, considering all potential sources. I mean, this decision is night and day better than the last decision we just – we were just contemplating. I mean, this one expressly states the law and then follows it, and it goes on for pages on all the various potential sources and theories of torture. Yes. If you look at AR-99, the immigration judge lists out the sources of torture, and he characterizes them as four. He says psychiatric facility, penal facility, gang members, and harm due to indigenous ethnicity. He doesn't list police or military. He doesn't list – I'm sorry, what? He does not list police or military in there. So he lists out – he says these are the four sources of torture, but doesn't mention the police or the military. But he's saying places, you know, psychiatric facility, a penal facility, gang members or criminals. You're saying that because he didn't say police torture? Yeah. Yes. So he characterizes this claim as being about four sources of torture on AR-99. He says psychiatric facility, penal facility, from gang members in the community, or because he's indigenous. And yet he does not list the police or military, whereas in the pretrial brief, there was an entire section dedicated to police and military, and there was ample country conditions to support that. But that is not included in that list of perceived sources of torture. And then it goes on for the rest of the decision. You can see that he's not addressed it in any other parts. And I see I'm running out of time, so unless there are any further questions, I will reserve the rest of the time for rebuttal.  I think your co-counsel preserves some time for rebuttal. All right. Thank you. May it please the Court. Christopher Pryby for the Attorney General. For the reasons stated in the Attorney General's brief, the petition should be denied. I'd like to comment on a few points that were raised in the reply brief. One was that an improper acquiescence standard was applied, relying on Madrigal versus Holder. Although Madrigal does talk about the efficacy of efforts, that is not the holding of its discussion on acquiescence. Rather, the thrust of its discussion on acquiescence was that you can't look to just high-level government efforts. You also have to look at individual or lower-level government, the likelihood that they will acquiesce to torture. So any statement that you have to look at the efficacy of efforts in Madrigal is dictum, and it's confirmed by the cases, I believe all of these post-date Madrigal, Garcia Millon, Andrade Garcia, Delmcid Marroquin, and Sonpansi Salazar, which all say that its ineffectiveness is not sufficient evidence to compel a finding of acquiescence. Rather, the correct reading is to look at the individual circumstances, the particular circumstances of the petitioner, and then to determine whether there is an awareness. I think we have some cases that say that just because the country has laws outlawing persecution on particular grounds doesn't necessarily mean that the police don't turn a blind eye. So I think that's what that line of cases is talking to, but I don't think that's the situation here. What is not the situation in particular? What is the evidence that the police in this case, in this situation, are turning a blind eye? I mean, is it just the fact that they didn't find the murder of his brother? I think that's the only evidence that the petitioner put forward, but then in his reply brief, the petitioner also disclaims that that evidence is sufficient to show acquiescence. So I think the petitioner is relying primarily on generalized country condition evidence here. Would you comment briefly on what the expert would contribute and the contention that that testimony was improperly ignored? So aside from the exhaustion problem, the testimony that they pointed to, at least to the agency, was that he was saying that it's likely that the petitioner would be targeted and killed. I think that that potentially mischaracterizes his testimony below, but perhaps that maybe it's a fair inference from the entirety of his materials. But that said, because torture was not the dispositive issue, at least as to gangs outside of detention, acquiescence was the dispositive issue. So Rehman, just for consideration of his evidence on torture, would be a futile and idle endeavor in this case. All right. And then any further questions or further issues? So opposing counsel argued that the aggregation analysis was not sufficient because the IJ failed to include the police and the military. Can you address the agency's aggregation analysis? The agency properly considered all the different sources of potential torture. To the extent the military was raised, that has been either abandoned or forfeited because it wasn't pressed initially in this court. And the way the police was raised before the agency was in the context of detention, that the police would arrest him and then torture him in detention. So I'm sorry, Your Honor. That was my question. Is that dependent on his doing something that would cause him to be detained? That seems to be the thrust of the argument. And then the agency lays out all the different reasons that he won't decompensate to the point of being institutionalized or won't recidivize, recidivate, and won't otherwise come to the police's attention. So because there is no likelihood or very small likelihood of detention, and that's the underlying assumption to all these non-gang sources of torture, you don't need to go past the fact that it's unlikely he's going to be detained. Your friend on the other side argued that in the aggregation analysis, the IJ failed to consider beatings by the police. My reading of the petitioner's arguments before the agency was that beatings from police would occur, not out in the wild in the community, but only in the context of detention.  Okay. He does consider being in a penal institution.  Or otherwise being arrested by the police because his symptoms are escalating or something to that effect. Was it wrong to exclude the testimony about his beating in the prison in the United States by inmates? Because the IJ properly found that it's unlikely that he will be detained in prison in Guatemala. So it all goes down to being detained. Yes, Your Honor. If Your Honors have no further questions. I don't have any questions. The Attorney General requests that you deny the petition for reveal. Thank you. Thank you, Counsel. Thank you. Thank you, Your Honors. Just a few points on rebuttal. First, the government wishes to frame this case as a matter of mere ineffectiveness of the police. That is not this record. They cite Garcia Millon v. Holder to say that this is just chalked up to ineffectiveness. But contrary to the arguments made by the government, the record shows an affirmative failure by the police to investigate the murder of Mr. Dominguez-Chich's brother despite notice and a legal duty to act. And in Garcia Millon v. Holder and other cases cited by the government, the police didn't know the identity of the assailants. Here in the record, it was very clear that the assailants were Barrio 18. They had been extorting and harassing the family for years. Barrio 18 controlled the neighborhood in which they lived. This was not a great mystery of who the assailants were. This was not a crime that only could be solved by a team from CSI. It was the police either being fearful of the gangs or colluding with the gangs. But why is he in any different position than anybody else with respect to the gangs when he goes back? Because, Your Honor, he and his family have defied Barrio 18. And they have knowledge of that. They have Dr. Kirkland explicitly testified that the gangs have memory about these incidents. And if he returns like he testified at AR 405 to 407, he'll likely end up like his brother. And second, Your Honor... Is that torture with government acquiescence? Yes, Your Honor, because... Why? Because the police have failed to protect the family and they have failed to investigate even this murder here by the brother. And second, Your Honor, as to aggregation... The IJ held that there was a theoretical possibility that Mr. Dominguez-Cheech could be detained. And under Velasquez-Samayoya, it was incumbent upon the agency to analyze his risk of torture within prison. But even if this court believes that the agency conducted a proper aggregation analysis, remand is still required here because of two blatant legal errors. And that is applying the wrong acquiescent standard and ignoring dispositive expert testimony from Dr. Kirkland. And unless there are any further questions from the court, we would request that you grant the petition for review. Okay. This case will be submitted. And once again, I want to thank Immigrant Defenders Law Center for pro bono representation in this case. You were not appointed by this court, as I understand it. That's correct. He wasn't accepted in the pro bono program, but we represented him pro bono. Well, thank you very much for helping us out on this case. Thank you, Your Honor. And this session of the court is adjourned for today. All rise.
judges: SCHROEDER, WARDLAW, BADE